### JENKINS *vs.* PELL

The affidavit accompanying a *warrant of distress for rent* is sufficient, in the statement of the *time for which the rent accrued,* if it be alleged that the amoun claimed is *for one quarter's rent due the first day of February last,* in a case where, by the terms of the lease, a quarter's rent became due on the first day of February. ♦

An avowry cannot be objected to for *variance* from the proof, where a *warrant of distress,* executed *under seal,* is set forth in the pleading without alleging it to have been so executed.

ERROR from the supreme court.    *Jenkins* brought an action of *replevin* against *Pell,* in the New-York common pleas.    The defendants avowed the taking of the goods in question for *rent in arrear,* setting forth the making of an affidavit of the amount of rent due, &c. and the delivery of a warrant of distress to a *marshal* of the city, by virtue whereof the goods were taken. The affidavit, made on the 26th April, 1834, was in these words : " City and county of New-York, ss. Ferris Pell, being duly sworn, says, that Thomas Jenkins is justly indebted to him in the sum of one hundred dollars, lawful money of the United States, for rent of certain premisés, situated No. 77 Grand-street

in the said city, *for one quarter's rent due the first day of February last.*"  The *warrant of distress* delivered to the marshal was in one of the avowries alleged to be a *warrant of distress in writing ;* in the other the allegation was merely that a *warrant of distress* was delivered to the marshal.   On the trial of the cause it was admitted by the counsel for the plaintiff, that the plaintiff held the demised premises as the tenant of the defendant *under the rent* and payable *at the time* in the avowries mentioned.   (The avowries stated that the plaintiff held under the yearly rent of $400, payable *quarterly,* on the first day of *August, November, February* and *May,* by even and equal portions.)   It was further admitted, that the sum of $100 of the rent for the space of three months *beginning* on the first day of *November* 1833, and *ending* on the first day of *February,* 1834, was due and in arrear at the time of the distress.   The *warrant of distress* produced on the trial was *under seal.*   The counsel for the plaintiff raised two objections to a verdict for the defendant : 1. that there was a *variance* between the warrant, as described in the avowries and as produced in evidence; the warrant produced being *under seal,* and the avowries containing no allegation that it was under seal ; and 2. that the *affidavit* did not conform to the requirements of the statute.   The court of C. P. overruled the objections, and the jury, under its direction, found a verdict for the defendant, on which judgment was entered.   The plaintiff having excepted to the decisions of the court, the record was removed into the supreme court, where the judgment of the C. P. was *affirmed.*   See the opinion delivered in the supreme court, 17 *Wendell,* 418.   The plaintiff sued out a writ of error removing the record into this court, where the case was argued by

*C. O'Conner,* for the plaintiff in error.

*J. Law,* for the defendant in error.

After advisement, the following opinions were delivered :

By the CHANCELLOR.   There is no foundation whatever for the objection which was made in this case, that the *warrant* or

power to distrain, produced on the trial, varied from that set forth in the avowry. Where the law requires an instrument to be under seal to authorize a particular remedy thereon, it is necessary, in pleading, to state the fact that it was under seal, either in terms or in other language from which the fact that it was under seal can be legally inferred. But where, as in this case, it was wholly immaterial whether the instrument was or was not under seal, an averment that it was in writing will be supported by the production of a written instrument either with or without a seal attached to the same.

The objection to the affidavit is one as to which there is more doubt. The defendant avowed the taking, &c. because the premises were leased at the yearly rent of $400, payable quarterly, on the first of August, November, February and May, in equal proportions ; that the plaintiff had occupied the premises for nine months ending on the 1st of February, 1834 ; that $100 of the rent aforesaid, for the space of three months, *beginning on the first of November,* 1833, *and ending on the first of February,* 1834, was due and in arrear, whereof an affidavit was duly made, &c. pursuant to the statute, &c. The affidavit produced does not in terms state that the rent of $100 for one quarter's rent *due* on the first of February, 1834, was for the quarter of a year which actually *ended* on that day, and as the statute requires that the affidavit should state *the time for which the rent accrued,* as well as the amount due, if it cannot be fairly implied from this affidavit that the rent was for the quarter ending on the first of February, as well as that it became due on that day, it is unquestionably a fatal variance. In that case it comes directly within the decision of the supreme court in *Marquissee* v. *Ormston,* 15 *Wendell,* 368, in which it was held that the affidavit was fatally defective in not stating the time for which the rent accrued, instead of the time when it became due. As this is a mere technical question upon the meaning of this affidavit, the jury having found the fact that the $100 for which the distress warrant issued, was for a quarter's rent *for a quarter ending on the first of February,* and which was due and unpaid, I am disposed to concur in the

construction put upon the affidavit by the court below, although the affidavit might have been technically true if the rent had been for a different quarter, but made payable on the first of February. I am inclined to think, with Mr. Justice *Bronson*, that an ordinary man, unversed in technical niceties, upon reading this affidavit would come to the conclusion, that the deponent meant to swear that there was $100 due for the rent of the quarter *ending* on the first of February, 1834. I therefore am not prepared to say that the decision of the common pleas was erroneous ; and shall accordingly vote to affirm the judgment of the supreme court which sustained that decision.

By Senator DICKINSON. The only question which I propose to discuss in this cause, is, whether the affidavit of the defendant in error which accompanied the warrant of distress was in compliance with the statute. The 8th section of the article of the statute entitled " of distress for rent," 2 *R. S.* 412, 2*d ed.* is as follows : " No officer shall proceed to make distress for rent, unless there be annexed to, or delivered with the warrant of distress an affidavit, made by the landlord for whose benefit the distress is to be made, or by his agent or receiver, before some officer authorized to administer oaths, specifying the amount of rent due, *and the time for which it accrued.*"

In the view I have taken of this cause, it is sufficient for my purpose that this provision of the statute is as clear and positive as can be framed from the English language, and in its general operation, is eminently calculated to shield the tenant from the unjust exactions of an oppressive and overreaching landlord.

But, if it is necessary to render a reason for the existence of the statute, and to establish its utility in detail, before we are permitted to acknowledge its force, I apprehend one of the many obvious reasons for enacting this section, may be found in the second section of the article referred to, which prohibits a distress for rent for which a *judgment shall have been recovered.* If, then, this affidavit is sufficient in a case where *two* quarters of rent are due, the landlord may recover judgment for the first

quarter, and then distrain for one quarter's rent, not designating which; for both quarter's rent will be *due* in the language of the affidavit, and this done, he may then insist that his affidavit had relation to the first quarter's rent, and distrain for the second quarter with perfect impunity, and thus defeat this most express and salutary provision. I differ most essentially from the opinion of the supreme court, that " *this allegation fairly implies that the rent had accrued for the quarter of a year which immediately preceded the first day of February.*" The affidavit proves only that one quarter's rent of the premises, amounting to one hundred dollars, was *due* the first of February. But how long it had been due, and whether the rent had accrued for the quarter, or even for any portion of the year next preceding the making of the affidavit, or whether it was rent yet to accrue, but made payable in advance by the terms of the lease, is left entirely to conjecture; and the affidavit will as well apply to one case as the other. It does not either in form or substance state the *time for which the rent accrued,* and to sanction this careless neglect or wilful disregard of the statute, will open a wide door for fraud and oppression, and leave the tenant to the mercy or caprice of his landlord, unprotected by the salutary restraints which legislation has attempted to throw around him.

The affidavit should contain two allegations; the *amount* of the rent due, and the *time* for which it accrued. If the rent is honestly due, and the landlord has the right to distrain, this requirement of the statute is easily complied with, nor can there be any hardship imposed by insisting upon its strict observance.

The dominion of the landlord over his tenant, even in the subdued form tolerated rather than authorized by our statute, is sufficiently summary in its character to suit the spirit of the times, when confined to its legitimate boundaries. But to clothe him with implied powers, or rather, virtually leave him to uncontrolled discretion by casting down the only barrier which legislation has erected between rapacity and want, is more in accordance with the relations of the feudal than the present age. It is worse than vain for legislation to interpose the protecting forms

of written law, if they may be rendered spiritless and nugatory by judicial repeals. If the statute means any thing, it means that the landlord (who it constitutes his own judge) shall make an affidavit stating the amount of rent due, the time when the term commenced for which the rent is claimed, and the time when it ended. Nothing more or less than this will or ought to satisfy the statute. This is its plain and common sense construction ; nor can it be made to read otherwise, unless put to judicial torture.

Nor do I arrive at this conclusion in the absence of authority. In *Marquissee* v. *Ormston*, 15 *Wendell*, 368, Chief Justice Savage says : " *The affidavit should state the commencement as well as the termination of the time when the rent accrued.*" And he further justly adds : " Where there is no ambiguity in the language of a statute, the court have no right to understand it in any other sense than according to the plain import of the terms used by the legislature."

A great portion of our whole litigation arises from controversies growing out of the construction of our statutes, in attempting to change their popular and obvious import, and give them a meaning strained and artificial. This has infused into society a litigious spirit, which has blocked up and retarded the ordinary administration of justice, crowded our libraries with expensive but useless volumes, broken the constitutions of our judges, and impoverished the people. Nor will it ever find a satisfactory or successful termination until abandoned ; but difficulties will increase as decisions are multiplied, and, in the end, clouds and darkness will be left to rest upon a science which claims for its highest attribute the perfection of reason.

I deem the principle to be decided in this case an important one, as well in its operation upon the laws of landlord and tenant, as its effect upon the construction of our statutes generally. The statute requiring the affidavit of the landlord as to the amount of the rent due, and the *time for which it accrued,* is not only positive in its requirement, but is calculated to be just and salutary in its operation, and ought not to be dispensed with. The affida-

vit of the defendant in error is not in compliance with either its letter or its spirit; and for this reason, in my opinion, the judgment of the supreme court ought to be reversed.

By Senator VERPLANCK. I have no hesitation in affirming the judgment in the court below. It was immaterial whether the warrant of distress was sealed or not. The description of the warrant, " as a warrant of distress in writing, duly executed, and in all things made conformable to law," was alike applicable to a warrant under seal and unsealed, and either of them was good in law. The fact of the seal had no bearing, either on the substance or the form of action ; it is therefore no variance.

The *affidavit* I think sufficiently clear. The statute says " the affidavit shall state the term for which the rent accrued." The object must be to give notice to the tenant, to prevent a subsequent distress for the same term, as well as recovery of rent for the same term by suit. But as the affidavit is or may be drawn by the landlord himself, it is not required to be expressed with technical precision, so as to exclude every possible meaning that under any circumstances other than those of the real case it might be made to bear. It must be certain to a common intent, and no more. Here, the landlord swore that the distress was for a quarter's rent due the first of February. The general usage of the city of New-York, would at once interpret this to mean, " rent for a quarter, that ended on the first of February." It might indeed be, that by a very special contract, the quarter's rent might be made payable on that day *in advance.* Such, however, is not the obvious nor probable meaning, nor unless a special contract was shown, the legal presumption ; for the statute in regard to leases in the city of New-York expressly recognizes the custom of the city, and provides, that when no special contract declares otherwise, the lease shall be deemed to be from May first to May first, payable at the expiration of each quarter on the usual quarter days. Here there was both an interpretation by usage and custom, and one by legal presumption, both giving a clear sense to the affidavit, agreeing with the actual

fact. Had it been otherwise, and the distress made for rent due in advance, it should have been so set forth in full or the affidavit would be bad, because the words would convey a sense differing from the true state of facts. In this case, the affidavit answers all the purposes of the law.

On the question being put, *Shall this judgment be reversed?* the members of the court divided as follows :

*In the affirmative :* The PRESIDENT of the Senate, and *Senators* DICKINSON, LACY, LOOMIS, MAYNARD, MOSELEY, WILLES —7.

*In the negative :* The CHANCELLOR, and *Senators* J. BEARDSLEY, L. BEARDSLEY, BECKWITH, DOWNING, HULL, HUNTER, HUNTINGTON, JOHNSON, H. F. JONES, LEE, H. A. LIVINGSTON, SKINNER, SPRAKER, STERLING, VAN DYKE, VERPLANCK, WAGER —18.

Whereupon the judgment of the supreme court was AFFIRMED.